# CHARLESTON.

## RITTENHOUSE *v.* HARMAN.

### March 2, 1874.

1874.
January Term.

1. Under the act of the Legislature on the subject of attachments, passed in 1867, an affidavit that the affiant "thinks" the plaintiff ought to recover the sum claimed, is not equivalent to an affidavit that he "believes" he ought to recover such sum; and is not sufficient to authorize an attachment.

2. Though a bill be multifarious, and but vaguely state the matter on which relief is sought, consent by the parties, to an interlocutory decree that the cause be referred to a commissioner, to audit, state and settle an account of the amount due each of the plaintiffs, is a waiver of any objection to such irregularity; and a demurrer thereafter, for such cause, is properly disallowed.

3. When the defendants are all non-residents of the State, and none have before appeared, the record of such consent by the parties, implies that all of the defendants appear and submit to the jurisdiction of the court.

4. When, apparently, two defendants, by counsel, petition for an appeal, which is allowed, and so appear and prosecute the appeal, though, on the hearing evidence is found in the case, tending to show that one was dead before the decree appealed from was rendered, yet, in this Court, it appearing that the decree is erroneous, and the other appellant having the right to prosecute the appeal and have the decree reversed as to both, the Court will not, of its own motion, institute an inquiry to ascertain whether the party be living; but will treat him as before the Court, by counsel, and reverse the decree, with costs to both appelants.*

*The following is the act referred to in the syllabus:

Section one and three of chapter one hundred and fifty-one of the

An appeal by Othias Harman and Asa W. Thompson, <span>1874.<br>January Term.</span> from a decree of the circuit court of Wirt county, rendered on the 14th day of March, 1872, in a suit in chancery, therein pending, wherein William Rittenhouse and others were complainants and Othias Harman and others were respondents, all of whose names appear in the decision of the Court. The facts sufficiently appear in the opinion of Hoffman, Judge.

Rittenhouse
v.
Harman.

The Hon. James M. Jackson, judge of said circuit court, presided at the hearing below.

*John A. Hutchinson, Jr.*, for the appellants.

*Walter S. Sands*, for the appellees.

HOFFMAN, JUDGE:

It is necessary to state but a small part of what the record of this case contains, in order to develope the points decided.

Code of Virginia, second edition, are hereby amended and re-enacted so as to read as follows:

"1. When any suit is about to be, or is instituted, for the recovery of any debt or damages arising out of any contract, or to recover damages for any wrong, the plaintiff may have an order of attachment against the property of the defendant on filing with the clerk of the court in which such suit is about to be, or is brought, his own affidavit or that of some credible person, stating the nature of the plaintiff's claim, that it is just, the amount the affiant believes the plaintiff ought to recover, and the existence of some one or more or the following grounds for such attachment:

*First*—That the defendant, or one of the defendants, is a foreign corporation, or is a non-resident of this State; or

*Second*—Has left or is about to leave the State with intent to defraud his creditors; or

*Third*—So conceals himself that a summon cannot be served upon him; or

*Fourth*—Is removing, or is about to remove his property or a part thereof out of this State with intent to defraud his creditors; or

*Fifth*—Is converting, or is about to convert his property or a part thereof into money or securities, with intent to defraud his creditors; or

*Sixth*—Has assigned or disposed of his property, or a part thereof, or is about to do so, with intent to defraud his creditors; or

*Seventh*—His property or rights in action which he conceals; or

*Eighth*—Fraudulently contracted the debt or incurred the liability for which the suit is about to be, or is brought.

The affiant shall also state in his affidavit all the facts upon which he relies to show the existence of the grounds upon which his application for the attachment is based. The order may be made at the

In January, 1869, William Rittenhouse, C. D. Morrill, Benjamin Flint and B. P. Flint, sued out of the clerk's office of the circuit court of the county of Wirt, a summons in chancery against Othias Harman, Daniel Dutsman, Thaddeus A. Mitchell, Jonathan Sherman, A. W. Thompson, Addison Pearson, George L. Wolfe, Edward L.Brockwalter, John J. Throckmorton, Samuel L. Wallace, Milton L. Clark, Mary Sifford and Lewis W. Sifford, her husband, John M. Snyder and —— Hamlin.

And the plaintiffs filed an affidavit of Rittenhouse, in which he makes oath, that the suit is instituted for the purpose of settling up a partnership previously existing between the parties, and for the colletion of the sum of $1,162.50, with interest due the complainants Morrill and Rittenhouse; and that affiant thinks they ought to recover at least that sum, with interest and costs, and that the same is justly due. On the summons was endorsed, a recital that the affidavit had been filed, and and order that the sheriff attach the real and personal estate of the defendants, (except that of Throckmorton and Buckwalter,) in the county of Wirt, sufficient to pay the sum of $1,162.50, with interest and costs, and report the proceedings.

commencement of the action, or at any time after, and before judgment. It shall be issued by the clerk and may be in form or effect as follows:

> A. B., plaintifl,    ⎫
>     *vs.*         ⎬ Order of attachment.
> C. D., defendant, ⎭

The plaintiff in this cause having filed his affidavit, as required by law, the sheriff or any constable of the county of —— is hereby required to attach the estate of the defendant sufficient to pay the sum of —— dollars and the costs of this suit, and make return of the proceedings under this order to the next term of the circuit court of the county of —— Witness, E. F., clerk of said court, this —— day of —— 18 —

E. F., Clerk.

If the plaintiff files the bond and security required by law to authorize the officer levying the attachment to take possession of the property levied upon, that fact shall also be stated in the order."

"3. On the application of any person by himself or his agent to any justice, whether his claims is payable or not, for an attachment against the estate of his debtor, accompanied by the affidavit provided for in the first section as amended by this act, and also showing at what time the same is payable, the justice shall issue an attachment against the estate of the defendant, for the amount stated in said affidavit."

And the sheriff returned that on the fourth pay of January 1869, he attached all the right, title and interest of the defendants—naming them—(except. Throckmorton and Buckwalter) in and to an oil lease on the land of the Rathbone Oil Tract Company in the county of Wirt, known as the "Cozzens lease," and a steam engine on the lease, and all the stock and interest of each of the defendants in the Ross County Oil Company.

The plaintiffs filed their bill, in which they allege that in October 1866, they, with the defendants, (except Lewis W. Sifford and Hamlin)—naming the others conjointly purchased a leasehold estate in a tract of land in the county of Wirt, containing about four acres, and a steam engine and fixtures thereon, and a lease known as the Cozzen's lease, and a steam engine and fixtures thereon, for the sum of $12,500, and that the parties held different, undivided, interests in the property—Rittenhouse eight fortieths, Morrill four fortieths, Harmon four fortieths, Thompson one fortieth, and the other parties to the suit (except Lewis W. Sifford and Hamlin) interests which were specified: And that each of these paid their respective portions on the leasehold estate: That in November, 1866, they sold two leases on the tract of land mentioned, each containing five eighths of an acre, to a corporation formed under the laws of Ohio, named the "Ross County Oil Company," and by deed dated in January, 1867, Rittenhouse, for himself, and as trustee for the other owners, conveyed the same to the Company, for the sum of $25,000, of which $5,000, was retained as working capital, and $20,000, paid to the owners— about one half in cash and the residue in stock of the Company, which was divided into shares of $100: That each of the owners received the following several amounts: Rittenhouse, $1200, in money and twenty-eight shares of stock; Morrill, ten shares of stock; Harman, $1000, in money and ten shares of stock; Thompson, five shares of stock; and the other owners amounts specified; the whole of which amounted to $19,000: That all the joint

owners received their respective proportions, except Morrill, who received only ten shares of stock—and no money: That Rittenhouse paid a claim to James Ballinger, amounting to $250, which was against the property at the time of the original purchase, and was to be paid by the purchasers: That Buckwalter and Throckmorton sold their interest remaining in the original lease to Hamlin, after the lease was made to the "Ross County Oil Company;" and that Mary Sifford is the wife of Lewis Sifford:

That all the defendants are non-residents of the State, but own property both real and personal, in the county of Wirt; and that the plaintiffs have caused an attachment to issue, by virtue of which the sheriff has attached all the right, title and interest of the defendants in and to an oil lease on lands of the Rathbone Oil Tract Company.

The plaintiffs pray that the parties heretofore mentioned as defendants—naming them—be made such, and be required to answer; that an account be taken of the amount paid in, and received by each of the parties, and the amount due the plaintiffs, and each of them; that the property attached may be sold to satisfy the plaintiffs' claim, and that they may have general relief.

With the bill, as exhibits, are filed a copy of a deed dated in December, 1866, from Norman Peck to Rittenhouse, for a two-tenths interest in the agreement of lease mentioned in the bill, in his, Rittenhouse's own right; and to him, as trustee, the remaining eight tenths interest, subject to agreements in the original leases, for the benefit of the respective parties; and a copy of a deed dated in January, 1867, from Rittenhouse, in his own right, and as trustee, as already stated, by which, in consideration of $25,000, to him paid, as recited, he grants to the Ross County Oil Company, all the right, title and interest of himself, in his own right and for his *cestuis que trust*, in and to two separate parts of a tract of land situated in the Rathbone Oil Tract Company's land,

known as the Cozzen's lease, and another tract—each described by metes and bounds. The latter deed does not appear to have been properly authenticated, but no exception is taken to the reading of the copy as evidence of the execution and contents of the paper.

In term, in August, 1869, by the consent of the parties, it was adjudged, ordered and decreed, that the cause be referred to one of the commissioners of the court, to audit, state and settle an account of the amount paid in and received by each of the parties to the suit, and the amount, if any, due the plaintiffs, and each of them; and that the commissioner should give notice as required by law, of the time and place of executing the decree.

The commissioner made a report, which was excepted to.

In November, 1869, the parties came, and the defendants moved the court to quash the attachment: And the commissioner's report was set aside and recommitted:

The commissioner made another report, which was excepted to.

The defendants demurred to the bill for multifariousness, and for other causes.

In March, 1870, the cause being heard, the demurrer was overruled, and the commissioner's amended report was set aside, and the cause was again referred to Lockhart, another commissioner.

This commissioner made a report in which it was stated that Rittenhouse, as trustee, sold and conveyed a portion of the lease to the Ross County Oil Company, for the sum of $25,000, one half of which was paid in money, and the residue in stock of the Company at $100 per share; that $5,000 was set aside as a working capital, and the residue was to be divided among the purchasers from Peck, according to their interests; and that Rittenhouse received twenty-eight shares of stock and $1,200 in money, equivalent to $4,000; Morrill ten shares of stock, equivalent to $1,000; Harman ten

49

shares and $1,000, equivalent to $2,000 ; and Thompson five shares, equivalent to $500 ; and that the other parties, respectively, received their shares of stock and money; the aggregate of all which was $19,000.

That each received his respective interest, in money or stock, from the Company, except Morrill, who was entitled to $2,000 : That Rittenhouse was entitled to recover from the parties named, $250, paid by him for repairs and work on the leasehold estate—that he received thereon eighteen-fortieths, amounting to $112.50, leaving a balance due him of $138.50, with interest : That the indebtedness of the defendants to Morrill, was $1,000, with interest.

The defendants excepted to the report, because the commissioner did not charge Rittenhouse and the other plaintiffs with their ratable proportions of the indebtedness.

In January, 1873, the cause being heard, the motion to quash the attachment, and the exception to the commissioner's report, were each overruled; and it was decreed that the plaintiff, Rittenhouse, recover of the defendants the sum of $138.56, with interest ; and that the plaintiff, Morrill, recover from the defendants the sum of $1,000, with interest ; and that the plaintiffs recover costs.

Harmon and Thompson obtained an appeal to this Court.

The act of the Legislature, in force when the attachment issued, (Acts 1867, ch. 118,) contained this provision :

"When any suit is about to be, or is, instituted, for the recovery of any debt or damages, arising out of any contract, or to recover damages for any wrong, the plaintiff may have an order of attachment, against the property of the defendant, on filing with the clerk of the court, in which the suit is about to be, or is, brought, his own affidavit, or that of some credible person, stating the nature of the plaintiff's claim, that it is just,

the amount the affiant believes the plaintiff ought to recover, and the existence of some one or more of the following grounds for such attachment." The act then specifies such grounds.

It is desirable that the draft of an affidavit should suggest to the party to swear, not only the fact which he is about to verify, but, if not the evidence, at least the degree of conviction he is to assert. It is important that an affidavit to obtain an attachment, state, exactly, the belief of the fact required to be verified, or what is fully and plainly equivalent to it. The existence of evidence, the consideration of its credit and force, and the conviction of its sufficiency, are not implied in a statement that an affiant "thinks" a thing is true, to the same extent and in like degree that they are implied, in whole or in part, in a statement that he "believes" it is true. In this case the affiant merely swears that he thinks the plaintiffs ought to recover an amount specified; but, he does not state any amount which he believes either of the plaintiffs ought to recover. And, therefore, there was no sufficient ground for the attachment.

The bill alleges a sale by all the owners, and in one place indicates that the sum of only $19,000 was paid; while in another place it indicates that the whole of the $20,000 was paid; but, who gave the credit for the $1,000, payable to Morrill, or why it was not paid, or if it was paid who received it, the bill does not state.

Previous to the consent decree for an account, entered in 1869, none of the defendants had been served with process, or appeared. The entry in the record reciting the consent of the parties to the suit, certainly implied that some defendants appeared. But, if it applied to any, it equally imported all that appeared.

Moreover, subsequent entries expressly show that the defendants appeared.

Whether the bill was multifarious, or failed to allege the matters relied on with sufficient certainty or not, the

defendants, by their consent to the interlocutory decree, waived any objection on such account, and submitted to the jurisdiction of the court; and at the taking of the account, either of the plaintiffs might prove any of the matters alleged in the bill or growing out of such matters, covered by the consent, that would entitle him to relief. After that consent the defendants could not demur availably.

The commissioner's statement, on its face, is defective, equivocal and erroneous. He states the amounts received by the different parties from the Ross County Oil Company, and the aggregate, $19,000.; thus indicating that the $1,000 was never paid by the Company; and he states that each of the persons, except Morrill, received his respective share: Yet he charges the whole of that sum, with interest, to the defendants, jointly. And the commissioner states that of $250, paid by Rittenhouse, he received $112.50; leaving a balance of $138.50 —in fact $137.50: Yet he charges the whole to the defendants, jointly.

It is not necessary to speak of error to the prejudice of defendants who do not appeal or ask a reversal. Their fate will be determined here by that of those who do appeal.

Neither the allegations of the bill, nor the evidence, nor the report, warrant the final decree.

Evidence in the case indicates that probably Harman was dead before the rendition of the final decree. But it is manifest that, whether he was living or dead, the decree ought not to stand. If the appeal were abated or dismissed, as to Harman, Thompson alone might prosecute it, and obtain a reversal of the joint decree, as to both. Under other circumstances, upon the evidence before it, this Court might of its own motion, institute an inquiry as to whether at the time of petitioning, Harman was alive: But such inquiry by the Court in this case, is not necessary to the attainment of justice;

and no party has properly moved for its institution.
And inasmuch as, by the petition, it appears that Har-
man lives and, as well as Thompson, by counsel, here
prosecutes his appeal, on the hearing the Court regards
him as so present.

For the reasons stated the decree of the circuit court of
Wirt county, rendered on the 14th day of March, 1872,
is reversed, with costs to the defendants against the plain
tiffs in the circuit court, the attachment is quashed, and
the property on which it was levied is discharged ; and
the report of Lockhart, commissioner, is set aside, and
an account, according to the consent decree of reference
is ordered to be re-audited, stated and reported.

The other Judges concurred.

DECREE REVERSED AND ATTACHMENT QUASHED.